# In the United States Court of Federal Claims

No. 11-681C

(Filed: October 20, 2014)
_____

| | |
|---|---|
| ANNETTE E. JONES, NORMAN SAMPSON, WAYNE RANDOLF SCOTT, ROLAND SIMMONS, HAZELLA THORNHILL, SIDNEY WALLACE, ANTHONY WILLIAMS, MICHAEL YAHKO, for themselves and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES,<br><br>            Defendant. | Class action – RCFC 23; Premium pay; Sunday premium pay under 5 U.S.C. §§ 5544(a) and 5546(a); *Fathauer*; Part-time employees; Numerosity; Commonality; Typicality; Adequacy;  Superiority; Motion for class action under RCFC 23 allowed, in part. |

_____

**OPINION**
_____

*Ira M. Lechner*, Katz & Ranzman, P.C., Washington, D.C., for plaintiffs.

*Kenneth David Woodrow*, Civil Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Stuart F. Delery*, for defendant.

**ALLEGRA, Judge:**

Plaintiffs are current or former part-time employees of the Department of Veterans Affairs (the VA).  Under RCFC 23, plaintiffs seek to certify a class of part-time government employees from any agency in the United States government, who were denied premium pay for regularly scheduled work on Sundays, allegedly in violation of 5 U.S.C. §§ 5544(a) and 5546(a).

**I.    BACKGROUND**

The Sunday premium pay statute was enacted as part of the Federal Salary and Fringe Benefits Act of 1966.  Pub. L. No. 89-504, § 405(c), 80 Stat. 288, 297-98 (1966).  Most executive agency employees are entitled to Sunday premium pay pursuant to 5 U.S.C. § 5546(a).

*See* 5 C.F.R. §§ 550.101, 550.171.  However, prevailing rate employees are covered by 5 U.S.C. § 5544(a).  *See* 5 C.F.R. § 532.509.  In this regard, 5 U.S.C. § 5544(a) provides:

> An employee subject to this subsection whose regular work schedule includes an 8-hour period of service a part of which is on Sunday is entitled to additional pay at the rate of 25 percent of his hourly rate of basic pay for each hour of work performed during that 8-hour period of service.

Similarly, 5 U.S.C. § 5546(a) provides:

> An employee who performs work during a regularly scheduled 8-hour period of service which is not overtime work . . . a part of which is performed on Sunday is entitled to pay for the entire period of service at the rate of his basic pay, plus premium pay at a rate equal to 25 percent of his rate of basic pay.

After this statute was passed, the Civil Service Commission (CSC), the predecessor to the United States Office of Personnel Management (OPM), requested an opinion from the Comptroller General regarding whether the Sunday premium pay provisions applied to part-time employees or only to full-time employees.  *See Fathauer v. United States*, 566 F.3d 1352, 1354 (Fed. Cir. 2009).  The Comptroller General concluded that the legislative history of the statute supported construing the term "employee" to exclude part-time workers.  46 Comp. Gen. 337 (Oct. 19, 1966).

CSC implemented the Comptroller General's recommendation and did not pay part-time workers Sunday premium pay.  In 1995, OPM amended the regulations governing this pay to specifically reflect their policy: "[a] ***full-time employee*** is entitled to pay at his or her rate of basic pay plus premium pay at a rate equal to 25 percent of his or her rate of basic pay for each hour of Sunday work." 5 C.F.R. § 550.171(a) (1995) (emphasis added).

On May 4, 2007, five part-time meteorologists for the National Weather Service brought suit in this court seeking Sunday premium pay for their regularly scheduled 8-hour periods of Sunday service pursuant to 5 U.S.C. § 5546(a).  The court granted summary judgment in favor of the government, deferring to OPM's interpretation of the Sunday premium pay statute.  *Fathauer v. United States*, 82 Fed. Cl. 509, 521(2008).  On May 26, 2009, the Federal Circuit vacated the ruling of the Court of Federal Claims and remanded the case for further consideration.  *Fathauer*, 566 F.3d at 1357.  The Federal Circuit found that "the word 'employee' clearly includes those who work part time," and therefore OPM's regulations were inconsistent with the plain meaning of the statute.  *Id*.

On December 8, 2009, in response to the Federal Circuit's decision, OPM issued Compensation Policy Memorandum (CPM) 2009-21, informing government agencies of the *Fathauer* decision and providing guidance to the affected agencies regarding the processing of administrative claims for employees who had been denied Sunday premium pay under 5 U.S.C. §§ 5544(a) and 5546(a).  It instructed the agencies to immediately compute and pay Sunday premium pay to part-time employees, both for future Sunday work and retroactive to May 26,

2009. However, in order to receive back pay and interest for Sundays worked before May 26, 2009, part-time employees were required to file an administrative claim with the agency that employed them. In these administrative claims, the burden of proof was placed on the employee to establish and prove through documentation that he or she was a part-time worker who qualified for Sunday premium pay and had not received the appropriate amount of pay.

In accordance with OPM's recommendation, several agencies, including the Department of Defense, the Department of Commerce, and the VA, established internal administrative processes through which part-time employees entitled to back pay and interest for past Sunday work could submit claims. Agencies also initiated efforts to pay Sunday premium pay to part-time workers going forward. The Department of Defense and the Department of Commerce began issuing Sunday premium pay to part-time workers in 2010. The VA has taken steps to develop a process for part-time employees to recover Sunday premium pay for Sunday work performed after May 26, 2009. In 2011, OPM amended the regulations implementing 5 U.S.C. §§ 5544(a) and 5546(a) to reflect the *Fathauer* decision that part-time employees are entitled to Sunday premium pay. 76 Fed. Reg. 52,537, 52,538 (Aug. 23, 2011) (codified at 5 C.F.R. §§ 532.509, 550.103, 550.171(a)).

On October 14, 2011, plaintiffs filed a class action complaint, for themselves and others similarly situated, requesting back pay and interest on the Sunday premium pay allegedly owed to them retroactive to May 26, 2003. On October 14, 2011, plaintiffs filed a motion for class certification. On November 3, 2011, briefing on the motion for class certification was stayed. On October 2, 2013, this court dismissed plaintiffs' claims for Sunday premium pay accruing before October 14, 2005, finding that those claims were barred by the six-year statute of limitations in 28 U.S.C. § 2501. *Jones v. United States*, 113 Fed. Cl. 39, 43 (2013).

On November 20, 2013, plaintiffs filed a renewed motion for class certification. On January 6, 2014, this court permitted plaintiffs to amend their motion for class certification. Plaintiffs seek to certify a class consisting of part-time government employees who have not been paid Sunday premium pay pursuant to 5 U.S.C. §§ 5544(a) and 5546(a) for regularly scheduled periods of performed work on or after October 14, 2005, of up to eight hours, which was not overtime work, a part of which was performed on Sunday. Any employees who would not be eligible for Sunday premium pay under 5 U.S.C. §§ 5544(a) or 5546(a) and those who have received their Sunday premium pay through administrative claims are excluded from the class.

Briefing on this motion has been completed. Oral argument is deemed unnecessary in this case.

## II. DISCUSSION

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)); *see also Douglas R. Bigelow Trust v. United States*, 97 Fed. Cl. 674, 675 (2011). Rule 23 of the Rules of the Court of Federal

Claims (RCFC) provides that a class may be certified if: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representative parties are typical of those of the class; and (iv) the representative parties adequately will protect the interests of the class. RCFC 23(a); *see also Douglas R. Bigelow*, 97 Fed. Cl. at 675-76.

In addition, a class action may be maintained if, *inter alia*, "(i) the United States has acted or refused to act on grounds generally applicable to the class" and (ii) "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b). The matters pertinent to these findings include:

> (A)  the class members' interests in individually controlling the prosecution of separate actions;
>
> (B)  the extent and nature of any litigation concerning the controversy already begun by class members;
>
> . . . . and
>
> (D)  the likely difficulties in managing a class action.

*Id.*; *see Houser v. United States*, 114 Fed. Cl. 576, 578 (2014); *Barnes v. United States*, 68 Fed. Cl. 492, 494 (2005). Ultimately, class certification is a matter committed to the discretion of the trial court. *See Wal-Mart Stores, Inc v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Christensen v. United States*, 49 Fed. Cl. 165, 166 (2001); *see also Califano*, 442 U.S. at 701; *Consol. Edison Co. of New York v. Richardson*, 233 F.3d 1376, 1384 (Fed. Cir. 2000).

As this court has oft-noted, the requirements of RCFC 23(a) and (b) can be grouped into five categories: (i) **numerosity** – a class so large that joinder is impracticable; (ii) **commonality** – in terms of the presence of common questions of law or fact, the predominance of those questions, and the treatment received by the class members at the hands of the United States; (iii) **typicality** – that the named parties' claims are typical of the class; (iv) **adequacy** – relating to fair representation; and (v) **superiority** – that a class action is the fairest and most efficient way to resolve a given set of controversies. *Barnes*, 68 Fed. Cl. at 494; *see also Adams v. United States*, 93 Fed. Cl. 563, 570 (2010). These requirements are in the conjunctive; hence, the failure to satisfy any one of them is fatal to a class certification. *See Testwuide v. United States*, 56 Fed. Cl. 755, 761 (2003); *see also Falcon*, 457 U.S. at 161 (making this observation as to the analogous Federal Rule of Civil Procedure).[1]

---

[1]  By way of guidance, the Committee Notes accompanying RCFC 23 indicate that, "[i]n the main," the rule adopts the criteria for certifying and maintaining a class action set forth in *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272 (Ct. Cl. 1972). However, to the extent that a direct conflict arises between *Quinault* and RCFC 23, RCFC 23 controls. *See* RCFC

It remains to apply the requirements of RCFC 23 to the facts in this case.  Plaintiffs bear the burden of establishing that their action satisfies these requirements.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *Douglas R. Bigelow Trust*, 97 Fed. Cl. at 676; *Barnes*, 68 Fed. Cl. at 495.  For this purpose, the court must assume the truth of the factual assertions contained in the complaint.  *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 405-06 (1977); *Barnes*, 68 Fed. Cl. at 495.

**Numerosity.**  First, as to numerosity, every indication is that the class in question is numerous enough that "joinder of all members is impracticable."  RCFC 23(a)(1).  RCFC 20(a) imposes two distinct requirements for such joinder: (i) a right to relief must be asserted by, or against, each plaintiff or defendant, relating to or arising out of the same transaction or occurrence, and (ii) some question of law or fact common to all the parties will arise in the action.  "'Both of these requirements must be satisfied in order to sustain joinder under RCFC 20(a),' this court has stated, "for if one or the other is not met, the parties are improperly joined.'"  *Barnes*, 68 Fed. Cl. at 495 (quoting *Franconia Assocs. v. United States*, 61 Fed. Cl. 335, 336 (2004)).  In the case *sub judice*, plaintiffs' claims, as well as those of the putative class, do not meet the transactional test of RCFC 20(a), requiring that the right to relief arise out of the "same" transaction or occurrence.  In the context of RCFC 20(a), "same" does not mean "similar."  *Franconia*, 61 Fed. Cl. at 337 ("well-known canons of construction suggest that the term 'same' must be construed consistently [in this court's rules], with the result that the term in the latter rule cannot mean 'similar'").  While RCFC 23(a)(1) requires that joinder only be impracticable, not impossible, the latter is the case here.  *See Houser*, 114 Fed. Cl. at 578; *Douglas R. Bigelow Trust*, 97 Fed. Cl. at 676-77.[2]

**Commonality**.  Regarding commonality, RCFC 23(a)(2) requires that there be questions of fact or law common to the class, and those questions must "predominate" over questions

---

83(a); *see also Fauvergue v. United States*, 86 Fed. Cl. 82, 96 n.13 (2009), *rev'd on other grounds sub nom. Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010); *Barnes*, 68 Fed. Cl. at 495.

[2] Several cases hold that another aspect of the numerosity requirement is that there be a legally definable class that can be ascertained through reasonable effort.  *See Simer v. Rios*, 661 F.2d 655, 669-71 (7th Cir. 1981); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995).  Such concerns, however, generally have been raised only in the context of so-called "opt out" class actions, in which the stakes of not contacting a class member are high.  In other contexts, concerns that an overly narrow class might "fail[ ] to include a substantial number of persons with claims similar to those of the class members" have led courts to conclude that "[a] broader class definition . . . might be more appropriate."  *See* Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges, at 7 (Federal Judicial Center 2005).  As an aside, the fact that plaintiffs do not know the exact number of class members does not preclude the granting of class status.  *See, e.g., Haggart v. United States*, 89 Fed. Cl. 523, 530-31 (2009); *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985) ("[t]he numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure").

affecting only individual members under RCFC 23(b)(3).  *See Barnes*, 68 Fed. Cl. at 496.  In determining whether these twin requirements are met, the court must, where necessary, look beyond the pleadings, and seek to develop an understanding of the relevant claims, defenses, facts and substantive law.  *See Falcon*, 457 U.S. at 160; *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978).  "Such an understanding prevents the class from degenerating into a series of individual trials."  *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003); *see also Barnes*, 68 Fed. Cl. at 496; *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 529 (E.D. Tex. 2003), *aff'd,* 100 Fed. Appx. 296 (5th Cir. 2004).  In the court's view, if different agencies, statutes, regulations and policies are involved, there is the real potential that this case will produce a different set of questions of fact and law.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002); *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740-42 (5th Cir. 1996); *see generally, Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2555 (2011).[3]  This factor thus supports only class certification as to VA cases, involving 5 U.S.C. § 5544(a) and 5 U.S.C. § 5546(a).

**Typicality**.  Typicality requires that "the named plaintiff's claim and the class are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Barnes*, 68 Fed. Cl. at 498.  Typicality can be established by showing that the "named representatives' claims share the same essential characteristics as the claims of the class at large."  *Curry v. United States*, 81 Fed. Cl. 328, 335 (2008).  With the exception of the VA claims that were the subject of the original complaint, plaintiffs have failed to provide the court with any indication that the members in the putative class suffered the same sort of injury alleged in the complaint.  The court will not simply assume as much, particularly as similar cases have been decided involving the same issues.  *See Gross*, 106 Fed. Cl. at 381; *Adams*, 93 Fed. Cl. at 576.

**Adequacy**.  The penultimate requirement of RCFC 23, adequate representation, requires a certified class to be "fairly and adequately" represented by class counsel.  RCFC 23(a)(4).  In making this evaluation, the court must consider whether (i) class counsel is "qualified, experienced and generally able to conduct the litigation," and (ii) class members have "interests that are 'antagonistic' to one another."  *Barnes*, 68 Fed. Cl. at 499.  Defendant provides little

---

[3] Aspects of this case are likely to require agency-specific analysis.  For instance, defining which employees were part-time or regularly scheduled for Sunday work may be dependent on agency policies, procedures, and record keeping.  *See Gross v. United States*, 106 Fed. Cl. 369, 374-77 (2012).  Determining whether employees have already received the Sunday premium pay owed to them will differ depending on which agency employed them.  *See* Department of Veterans Affairs Handbook 5007/39, Part V.6; Memorandum from Clifford L. Stanley, Under Secretary of Defense on "Administrative Claims for Sunday Premium Pay as a Result of the Decision in Fathauer v. United States, 566 F.3d 1352 (Fed. Cir. 2009)" (July 21, 2010); Memorandum from Joseph T. Abbott, Deputy Director, Workforce Management Office, Department of Commerce, on "Administrative Claims for Sunday Premium Pay as a Result of the Decision in Fathauer v. United States" (Mar. 25, 2010).

basis to contest plaintiffs' satisfaction of either factor. As to the adequacy of counsel, plaintiffs note that their attorney has significant experience in dealing with similar pay cases. *See Athey v. United States*, 115 Fed. Cl. 739 (2014); *Adams*, 93 Fed. Cl. at 567.[4] And, there is no claim that the plaintiffs in this action have interests that are antagonistic to those of the class. *See Douglas R. Bigelow Trust,* 97 Fed. Cl. at 678. Accordingly, this court finds that this requirement is met.

**Superiority**. The final requirement, superiority, is met when "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23 advisory committee's note (1966 amendment, subdivision (b)(3)); *see also Turner v. United States*, 115 Fed. Cl. 614, 617 (2014). Essentially, under this prong of analysis, the court is obligated to conduct a "cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action." *Starr Int'l Co. v. United States*, 109 Fed. Cl. 628, 636 (2013) (quoting *Barnes*, 68 Fed. Cl. at 499). Here, the cost/benefit analysis tips decidedly against class certification, except as to the claims involving the VA and 5 U.S.C. §§ 5544(a) or 5546(a). In the court's view, adding claimants from different agencies into the mix is likely to create more problems than their association solves.

Based on the following, the court **grants**, **in part**, and **denies**, **in part**, plaintiffs' motion. The plaintiffs' class shall consist of the following persons (and only those individuals):

> All part-time employees of the Department of Veterans Affairs who were or are employed on or after October 14, 2005, who have not been paid Sunday premium pay at a rate equal to twenty-five percent of his or her hourly rate of basic pay pursuant to 5 U.S.C. § 5544(a) or 5 U.S.C. § 5546(a) for periods of performed work on or after October 14, 2005, during a regularly scheduled period of service of up to 8 hours, which was not overtime work as defined by 5 U.S.C. § 5542(a), a part of which was performed on Sunday. For any such period of service, not more than 8 hours of work can be Sunday work, unless the employee was on a compressed work schedule, in which case the entire regularly scheduled daily tour of duty constituted Sunday work. Excluded from this class are all employees who were not entitled pursuant to title 5 of the U.S. Code to be paid Sunday premium pay for work performed on Sunday; part-time employees who have been paid all of the Sunday premium pay, pursuant to 5 U.S.C. § 5544(a) or 5 U.S.C. § 5546(a), owed to him or her by their employing agency as backpay plus interest for the entire period of time on or after October 14, 2005, during which such employees were eligible for such backpay and interest; and employees who were correctly classified as intermittent employees for the period on or after October

---

[4] Indeed, it is noteworthy that plaintiffs' counsel has dealt with 28 published opinions in this court, including several involving class action settlements. *See Quimbly v. United States*, 107 Fed. Cl. 126 (2012); *Adams v. United States*, 107 Fed. Cl. 74, 75 (2012).

14, 2005, during which such employees claim Sunday premium pay pursuant to 5 U.S.C. §5544(a) or 5 U.S.C. §5546(a).

On or before November 7, 2014, the parties shall file a joint status report indicating how this case should proceed, including a proposed plan for meeting the notice requirement of RCFC 23(c).

**IT IS SO ORDERED.**

s/Francis M. Allegra
Francis M. Allegra
Judge
