# In the United States Court of Federal Claims

No. 11-681C
Filed: April 1, 2016

**************************************
                                      *
ANNETTE E. JONES, *et al.*,           *
on behalf of herself and              *       5 U.S.C. §§ 5544(a) & 5546(a) –
all others similarly situated,        *           Sunday Premium Pay Statute;
                                      *       Rules of the United States Court of
        Plaintiffs,                   *           Federal Claims ("RCFC"),
                                      *           RCFC 23(a) Class Action,
v.                                    *           RCFC 23(b) Class Actions
                                      *               Maintainable,
THE UNITED STATES,                    *           RCFC 23 (c) Class Certification
                                      *               Order.
        Defendant.                    *
                                      *
**************************************

**Ira M. Lechner**, Katz & Ranzman, P.C. Washington, D.C., Counsel for Plaintiffs.

**Hillary A. Stern**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' MOTION TO AMEND CERTIFICATION OF CLASS ACTION

**BRADEN**, *Judge*.

This Memorandum Opinion And Order resolves Plaintiffs' Motion To Amend Certification Of Class Action Including Points And Authorities In Support Thereof, pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons discussed herein, Plaintiffs have failed, at this juncture, to establish, by a preponderance of the evidence, the requirements of RCFC 23.

## I.    RELEVANT FACTS.[1]

Originally enacted as Section 405 of the Federal Salary and Fringe Benefits Act of 1966, the Sunday Premium Pay Statute ensures that certain federal employees receive additional compensation for work performed on Sundays. *See* Federal Salary and Fringe Benefits Act of 1966, Pub. L. No. 89-504, § 405(c), 80 Stat. 288, 297–98 (1966) (codified as amended at 5 U.S.C.

---

[1] The relevant facts were derived from: (1) Plaintiffs' December 27, 2011 Amended Complaint ("Amend. Compl."); and (2) Plaintiffs' October 12, 2015 Motion To Amend Certification Of Class Action ("Mot. Am. Cert. Cl.").

§ 5546(a)).  The Premium Pay Statute applies to the majority of executive agency employees and to "prevailing rate" government employees.  *See* 5 U.S.C. §§ 5544(a),[2] 5546(a).[3]

On May 26, 2009, the United States Court of Appeals for the Federal Circuit held that "the word 'employee,' as used in Section 5546(a) of the Premium Pay Statute, clearly includes those who work part time."  *See Fathauer v. United States*, 566 F.3d 1352, 1354–57 (Fed. Cir. 2009). In response to this decision, the Office of Personnel Management ("OPM") issued Compensation Policy Memorandum (CPM) 2009–21 to inform government agencies of this decision and provide guidance to affected agencies as to how to process administrative claims by part-time employees who were denied Sunday premium pay.  Amend. Compl. at 4.  Specifically, OPM instructed the agencies to compute Sunday premium pay and interest retroactively to May 26, 2009—the date of the *Fathauer* decision—and distribute that pay to eligible part-time employees.  Amend. Compl. at 4.  To prove eligibility, part-time employees were required to file an administrative claim with the agency where they were employed.  Amend. Compl. at 4.  The administrative claim procedures placed the burden of proof on the employees to show, through documentation, that he or she was a part-time employee who qualified for Sunday premium pay, but had not received such compensation.  Amend. Compl. at 8.

In accordance with OPM's guidance, several agencies, including the United States Department of Veterans Affairs (the "VA"), the Department of Commerce, and the Department of Defense established internal administrative claims procedures to receive submissions from part-time employees entitled to back pay and interest.  Mot. Am. Cert. Cl. at 7–10.

---

[2] Section 5544(a) of the Sunday Premium Pay Statute, in relevant part, provides:

> An employee subject to this subsection whose regular work schedule includes an 8-hour period of service a part of which is on Sunday is entitled to additional pay at the rate of 25 percent of his hourly rate of basic pay for each hour of work performed during that 8-hour period of service.

5 U.S.C. § 5544(a).

[3] Section 5546(a) of the Sunday Premium Pay Statute, in relevant part, provides:

> An employee who performs work during a regularly scheduled 8-hour period of service which is not overtime work . . . a part of which is performed on Sunday is entitled to pay for the entire period of service at the rate of his basic pay, plus premium pay at a rate equal to 25 percent of his rate of basic pay.

5 U.S.C. § 5546(a).

In 2011, OPM amended its regulations to reflect the *Fathauer* decision.  *See* 76 Fed. Reg. 52,537, 52,538 (Aug. 23, 2011) (codified at 5 C.F.R. §§ 532.509, 550.103, and 550.171(a)).

## II.   PROCEDURAL HISTORY.

On October 14, 2011, Annette Jones, Norman Sampson, Roland Simmons, and Hazella Thornhill (hereinafter "Plaintiffs") filed a Class Action Complaint in the United States Court of Federal Claims and a Motion To Certify Class, for themselves and others similarly situated, seeking Sunday Premium Pay and interest dating back to May 26, 2003.  This case was assigned to Judge Francis M. Allegra.  On November 2, 2011, the Government filed an Unopposed Motion, Out Of Time, For Enlargement Of Time To Respond To Plaintiffs' Motion To Certify Class.  On November 3, 2011, the court issued an Order staying Plaintiffs' October 14, 2011 Motion To Certify Class, subject to further order.  On December 5, 2011, the Government filed an Unopposed Motion For Enlargement Of Time To Respond To Plaintiffs' Complaint.  On December 7, 2011, the court granted-in-part and denied-in-part the Government's December 5, 2011 Unopposed Motion For Enlargement Of Time, ordering the Government to file a Response on, or before, February 10, 2012.

On December 27, 2011, Plaintiffs filed an Amended Complaint.  On February 10, 2012, the Government filed an Answer.

On April 2, 2012, the parties filed a Joint Preliminary Status Report.  On April 27, 2012, the court convened a preliminary status conference.  On April 30, 2012, the court issued a Scheduling Order for the Government to file a partial Motion To Dismiss for lack of subject-matter jurisdiction on, or before, May 14, 2012, and staying discovery until further order.

On May 14, 2012, the Government filed a Motion To Partially Dismiss Plaintiffs' Complaint.  On June 14, 2012, Plaintiffs filed an Opposition.  On June 15, 2012, Plaintiffs filed an Unopposed Motion For Leave To File Corrected Brief and attached the corrected brief thereto.  On June 18, 2012, the court granted Plaintiffs' June 15, 2012 Unopposed Motion For Leave.  On July 2, 2012, the Government filed a Reply.  On July 10, 2012, Plaintiffs filed a Motion For Leave To File Surreply, that the court denied on July 16, 2012.

On August 23, 2102, the Government filed a Status Report, notifying the court of the ruling in *Gross v. United States*, 106 Fed. Cl. 369 (2012), a civilian back pay case, that denied a Motion For Class Certification.

On January 2, 2013, the court directed the parties to file a memorandum responding to questions posed by the court regarding the parties' briefing relating to the Government's May 14, 2012 Partial Motion To Dismiss.  On January 30, 2013, both parties submitted responsive memoranda.

On October 2, 2013, the court issued an Opinion finding that Plaintiffs' claims for Sunday premium pay that accrued before October 14, 2005 were barred by the six-year statute of limitations set forth in 28 U.S.C. §2501.  *See Jones v. United States*, 113 Fed. Cl. 39, 43 (2013) ("*Jones I*").

On November 20, 2013, the parties filed a Joint Status Report requesting that the court lift the November 3, 2011 stay on Plaintiffs' October 14, 2011 Motion To Certify Class. That same day, Plaintiffs filed a Renewed Motion To Certify Class. On November 21, 2013, the court entered an Order lifting the stay and scheduling briefing.

On December 20, 2013, Plaintiffs filed an Unopposed Motion For Leave To File A Corrected Copy Of Their Brief In Support Of Plaintiffs' Motion For Class Certification. That same day, the Government filed an Unopposed Motion For An Enlargement Of Time To Respond. On January 6, 2014, the court granted both motions.

On February 3, 2014, the Government filed an Opposition To Plaintiffs' Motion To Certify Class. On March 6, 2014, Plaintiffs filed a Reply.

On October 20, 2014, the court issued a Memorandum Opinion and Order granting-in-part and denying-in-part Plaintiffs' Motion For Class Certification. *See Jones v. United States*, 118 Fed. Cl. 728 (2014) ("*Jones II*"). Therein, the court determined that the proposed class would be limited to part-time VA employees subject to 5 U.S.C. §§ 5544(a), 5546(a). Specifically, the court rejected Plaintiffs' attempt to include employees from other federal agencies in the class, because Plaintiffs failed to show how Government-wide inclusion satisfied the requirements for class certification under RFCF 23. *See Jones II*, 118 Fed. Cl. at 73–74.

On December 9, 2014, Plaintiffs filed an Unopposed Motion To Appoint Counsel, Of Counsel, And Class Action Administrator, that the court granted the next day. That motion included a proposed official court notice and a proposed postcard notice to be circulated to putative class members, as well as a proposed protective order.

On January 7, 2015, the Government was ordered to notify the court whether it consented to the proposed notice, postcard notice, and protective order. On January 28, 2015, the Government filed a Response consenting to the proposed postcard and attaching a new proposed court notice and protective order to which the parties conferred and agreed. On January 30, 2015, the court issued a Protective Order. That same day, the court approved the postcard notice and class notice, and entered a Scheduling Order for the distribution of class notices and submission of opt-in claim forms on, or before, February 12, 2015.

On February 5, 2015, Plaintiffs filed an Unopposed Motion For Reconsideration of the court's January 30, 2015 Scheduling Order. On February 6, 2015, the court granted-in-part Plaintiffs' February 5, 2015 Motion For Reconsideration and ordered the Class Action Administrator to distribute a notice to the class on, or before, April 9, 2015, and required class members' opt-in claim forms to be postmarked on, or before, July 9, 2015. On April 23, 2015, the court issued another Scheduling Order.

On June 23, 2015, the case was reassigned to the undersigned judge.

On October 12, 2015, Plaintiffs filed a Motion To Amend Certification Of Class Action Including Points And Authorities In Support Thereof to seek the inclusion of part-time federal employees from agencies other than the VA. Therein, Plaintiffs included the Declaration of Daniel

Kowalski ("10/12/15 Kowalski Decl.") as Exhibit 6.  On October 28, 2015, the Government filed an Unopposed Motion To Enlarge Time To Respond To Motion To Amend Class, that the court granted the next day.  On November 25, 2015, the Government filed another Unopposed Motion To Enlarge Time To Respond To Motion To Amend Class, requesting a 15-day extension.  On November 30, 2015, the court granted the Government's November 25, 2015 Unopposed Motion to Enlarge Time and issued an Order on December 4, 2015 to inform the Government that no further extensions of time would be granted.  On December 14, 2015, the Government filed an Opposition To Plaintiffs' Renewed Motion To Certify Class ("Gov't Opp.").  On December 28, 2015, Plaintiffs filed a Reply ("Pls. Reply").

## III.   DISCUSSION.

### A.   Jurisdiction.

The Tucker Act provides that the United States Court of Federal Claims has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006).  The Tucker Act, however, does not, by itself, confer jurisdiction on the court.  *United States v. Testan*, 424 U.S. 392, 398 (1976) ("The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.  The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists.").  Therefore, a plaintiff must identify an independent basis by way of a contract, federal statute, regulation, or the Constitution upon which it is entitled to monetary payment from the federal government.  *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) ("The claim must be one for money damages against the United States and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.") (internal citations omitted); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) ("[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be money-mandating.") (internal citations and quotations omitted).

In this case, the December 27, 2011 Amended Complaint alleges that Plaintiffs and those similarly situated, have been wrongfully deprived of Sunday premium pay, pursuant to 5 U.S.C. § 5544(a) or 5 U.S.C. § 5546(a).  Amend. Compl. ¶¶ 5–7.  As such, the December 27, 2011 Amended Complaint properly identified and pled an independent claim for money damages. Accordingly, the court has jurisdiction over the class alleged in the December 27, 2011 Amended Complaint.

### B.   Standard Of Review On A Motion For Class Certification.

"[T]he party moving for class certification bears the burden of establishing, by a preponderance of the evidence, the requirements set forth in RCFC 23."  *Rasmuson v. United States*, 91 Fed. Cl. 204, 210 (2010); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78

(1974) (holding that the relevant inquiry on a motion for class certification is not "whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met").

RCFC 23(a), (b) provides:

(a) Prerequisites.  One or more members of a class may sue as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable.  A class action may be maintained if RCFC 23(a) is satisfied and if . . . (2) the United States has acted or refused to act on grounds generally applicable to the class; and (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by class members; . . . and (D) the likely difficulties in managing a class action.

RCFC 23(a), (b).

RCFC 23(a) and (b) set forth five requirements:

(i) **numerosity**—a class so large that joinder is impracticable; (ii) **commonality**— in terms of the presence of common questions of law or fact, the predominance of those questions, and the treatment received by the class members at the hands of the United States; (iii) **typicality**—that the named parties' claims are [typical] of the class; (iv) **adequacy**—relating to fair representation; and (v) **superiority**—that a class action is the fairest and most efficient way to resolve a given set of controversies.

*Barnes v. United States*, 68 Fed. Cl. 492, 494 (2005) (bolded in original) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (regarding Fed. R. Civ. P. 23(a), (b))).

Since the RCFC 23 requirements are in the conjunctive, failure to satisfy any requirement "is fatal to a motion for class certification." *Testwuide v. United States*, 56 Fed. Cl. 755, 761 (2003).  Therefore, to certify a class, the court must determine if plaintiffs have satisfied the prerequisites of RCFC 23 by a preponderance of the evidence.  *See Falcon*, 457 U.S. at 161 (holding that class actions "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied").  This analysis requires the court

to "make the factual and legal inquiries necessary to ensure that class certification is appropriate." *Christopher Vill. v. United States*, 50 Fed. Cl. 635, 642 (2001).

In addition, "[a]n order that grants or denies a class certification *may* be altered or amended before final judgment."  RCFR 23(c)(1)(C) (emphasis added).

### C.    Plaintiffs' October 12, 2015 Motion To Amend Class Certification.

#### 1.    Plaintiffs' Argument.

Plaintiffs argue that the court should amend the current class to include the "100 or more part-time employees [working at agencies other than the VA, who] have been shut out of the courthouse[,]" pursuant to the court's decision in *Jones II*.  Mot. Am. Cert. Cl. at 4.

With respect to the element of commonality, "there is no evidence in the record that participation of employees of different agencies, statutes, regulations and policies would create the real potential of different questions of fact and law arising in the case."  Mot. Am. Cert. Cl. at 13 (internal quotation marks omitted).  In addition, Plaintiffs disagree with *Jones II*'s reasoning that "[d]etermining whether employees have already received the Sunday premium pay owed to them will differ depending on which agency employed them[,]" because the amounts disbursed by each federal agency "must be specifically identified as such in the electronic records" and "recoverable by standard computerized queries for a multitude of reasons," including "federal and state taxes, retirement benefits, insurance, workers' compensation."  Mot. Am. Cert. Cl. at 13–14.  Moreover, "[i]n light of the Government-wide injury which was inflicted, this case simply cannot produce a different set of questions of fact and law if it applies to all federal agencies that employed eligible part-time employees, rather than just to the VA."  Mot. Am. Cert. Cl. at 20.

To support this contention, Plaintiffs proffer the Declaration of Daniel Kowalski, a human resources professional, with a 34-year career in the government, and experience as an instructor to other human resources professionals in various government agencies.  Mot. Am. Cert. Cl. at 22. (citing 10/12/15 Kowalski Decl.).  Mr. Kowalski advised the court that "all agencies utilize electronic computerized payroll and time and attendance systems to compute such back pay and interest in the regular and ordinary course of business."  Mot. Am. Cert. Cl. at 22–24 (citing 10/12/15 Kowalski Decl. at 4–5).  Therefore, the decision in *Jones II*, that employees from agencies other than the VA must be excluded from the class, because different federal agencies would have to order computerized searches of payroll records, is "inexplicable."  Mot. Am. Cert. Cl. at 22 (citing 10/12/15 Kowalski Decl. at 22).

With respect to typicality, "by definition, *all part-time employees* who worked scheduled non-overtime Sunday shifts suffered precisely the same monetary injury," irrespective of the specific federal agency where each part-time employee worked.  Mot. Am. Cert. Cl. at 11.

Finally, Plaintiffs argue that "restoring the inclusion in the certified class of eligible part-time employees of multiple federal agencies would be a clear demonstration of RCFC 23's utility and fairness."  Mot. Am. Cert. Cl. at 24–25.  Other federal agencies have demonstrated, by "identifying all eligible part-time employees who were scheduled to work on Sundays," that "no

significant problems [will] arise which will require this [c]ourt to refuse to include eligible part-time employees of such agencies—and all others—within the certified class." Mot. Am. Cert. Cl. at 6, 25. Moreover, each agency will be able to document the details of payroll and scheduling relating to eligible part-time employees, because "the agencies have retained computerized files which unmistakably prove, or disprove, the validity of each employees' entitlement to back pay." Mot. Am. Cert. Cl. at 25.

## 2.    The Government's Response.

The Government responds that Plaintiffs fail to satisfy the predominant element of this commonality requirement, because the only common issue of law—whether part-time employees are entitled to Sunday premium pay, pursuant to 5 U.S.C. § 5546(a), has been resolved by the Federal Circuit in *Fathauer*. Gov't Opp. at 10. The remaining issues involved in Plaintiffs' claims are fact-specific inquiries unique to each agency. Gov't Opp. at 10. Specifically, individualized factual inquiry is necessary for the court to identify part-time employees, because: (1) in 2006, payroll processing for Federal executive branch employees was handled by 26 providers; (2) "the payroll record for former employees generally are not maintained at the same location as the payroll providers"; and (3) "[p]ayroll records may contain some information about the class members, but it is necessary to identify class members before examining their pay records." Gov't Opp. at 10, 11. In addition, individualized inquiries are necessary to determine whether the putative class members have already received back pay, because although "payroll processing is now consolidated across most of the Government, each agency handles time-and-attendance independently. As a result, there is a wide variance of time-and-attendance systems across Government agencies." Gov't Opp. at 13.

In addition, the United States has not acted or refused to act on grounds generally applicable to the putative class, as required by RCFC 23(b)(2). Gov't Opp. at 14–15. Instead, "[P]laintiffs rely solely on . . . *Fathauer* . . . justifying relief for the whole class retroactive to October 14, 2005," but since *Fathauer*, "Government agencies have taken a variety of steps to identify potential eligible employees and to make payments of back pay and interest[,]" even though "the nature of the remedial measures varies by agency[.]" Gov't Opp. at 14.

The Government also argues that Plaintiffs fail to satisfy the typicality requirement of RCFC 23(a)(3). Gov't Opp. at 15–16 (citing *Curry*, 81 Fed. Cl. at 335; *Geneva Rock Products, Inc. v. United States*, 100 Fed. Cl. 778, 790 (2011)). In this case, "[P]laintiffs cite no evidence that the employees of other agencies have not been paid in accordance to OPM's instructions" as named Plaintiffs in this case. Gov't Opp. at 16. In addition, although "individualized damage determinations do not preclude class certification, the [issues] in this case extend beyond individualized damage[ determinations.]" Gov't Opp. at 16. Therefore, Plaintiffs have not shown that their claims are typical of the claims of the proposed class. Gov't Opp. at 17.

Finally, the Government adds that Plaintiffs have not established that an amended class action is superior to other available methods of adjudication. Gov't Opp. at 17 (citing RCFC 23(b)(3)). In this case, "the [c]ourt would need to individually assess each potential class member's entitlement to recovery in light of the different agency processes for implementing OPM's *Fathauer* instructions and for processing administrative claims." Gov't Opp. at 19.

Moreover, "[i]n its previous ruling on this issue[,] the [c]ourt held that 'the cost/ benefit analysis tips decidedly against class certification[.]'" Gov't Opp. at 18. In light of these factors, "the creation of a Government-wide class would be unmanageable." Gov't Opp. at 19.

### 3.    Plaintiffs' Reply.

As it relates to commonality, Plaintiffs reply that this court "carefully analyzed and rejected" the Government's argument that the *Fathauer* decision resolved the common question of law at issue in this case. Pls. Reply at 1.[4] In addition, Plaintiffs argue that "the Government does not and cannot, dispute the unconverted proof that[,] until the Federal Circuit's *Fathauer* decision on May 26, 2009," OPM prohibited every federal agency from paying Sunday premium pay to all General Schedule ("GS") and Wage System ("WG") employees. Pls. Reply at 1–2. This is "clear proof that the United States acted . . . on grounds generally applicable to the class." Pls. Reply at 2. Moreover, the Government's argument that "sophisticated computerized payroll systems are woefully inadequate to identify . . . class members and . . . to compute . . . back pay" are "boilerplate objections [that] have been rejected again and again by this [c]ourt. [In fact, three other judges of the court] also joined [the primary assigning judge in this case] in rejecting these exaggerated objections in a plethora of class actions such as *Adams*, *DeMons*, *Garcia*, *Filosa*, *Curry*, *Kandel*, *Athey*, and *Barnes*[.]" Pls. Reply at 2–3. Moreover, "Plaintiffs have produced uncontroverted evidence contained in the sworn Declaration of Mr. Daniel Kowalski" to support certification. Pls. Reply at 3.

With respect to typicality, Plaintiffs argue that "class action covers . . . [e]very formerly employed part-time employee who worked on Sundays in the three and one-half years (3 and 1/2) prior to May 26, 2009[,] suffer[ing] precisely the same economic injury with respect to the loss of back pay and interest as did Plaintiffs." Pls. Reply at 6. "The effect of the *Fathauer* decision, and OPM's new regulations applicable to both GS and WG employees, unquestionably demonstrated *that there was a systemic policy by every agency* to deny premium pay to all part-time employees who worked on Sundays." Pls. Reply at 6.

---

[4] In the December 28, 2015 Reply, Plaintiffs explain that the court previously rejected the Government's current argument relating to commonality:

> [I]n *DeMons v. United States*, Case No. 13-779C, the Government raised precisely the same argument on the ground that the court had decided the liability issue in *Adams v. United States*, 93 Fed. Cl. 563 (2010), and thus there was no common issue of law in *DeMons*[.] This court carefully analyzed and rejected the argument: 'But, the resolution of the legal question in *Adams* does not negate commonality in *DeMons*.' *See also* the same result in *Garcia v. United States*, Case No. 13-1024 (2015)[.] The court in *Curry v. United States*, 81 Fed. Cl. 328, 334 (2008) reached the same conclusion.

Pls. Reply at 1 (citations omitted).

As to superiority, Plaintiffs argue that a class action is the most efficient and fairest method of resolution. Pls. Reply at 7. Even if the Government took internal remedial action within two of its agencies, "[t]he Government refuses to disclose the number of former (as well as currently employed) part-time employees who are eligible to receive back pay, but . . . have not been paid damages." Pls. Reply at 7. Moreover, OPM's notice "placed the burden on the part-timers to produce all the evidence with respect to every Sunday they worked for the previous six years despite the fact that their agency had the computerized evidence[.]" Pls. Reply at 7.

### 4.      The Court's Resolution.

For a Motion For Class Certification to be successful, the putative class representatives must demonstrate, by a preponderance of the evidence, that: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; and (5) superiority are satisfied. *See Barnes*, 68 Fed. Cl. at 494.

### i.      Whether The Proposed Class Satisfies The Numerosity Requirement.

The Government does not dispute that numerosity is satisfied. For this reason, this court is satisfied that the requirements of RCFC 23(a)(1) have been met.

### ii.      Whether The Proposed Class Satisfies The Commonality Requirement.

To find commonality, the court must determine whether: (a) there are questions of law or fact common to the class; (b) those common questions predominate over any questions affecting only individual members; and (c) the "United States has acted or refused to act on grounds generally applicable to the class." RCFC 23(a)(2), (b)(2), (b)(3).

### a.      Whether A Question Of Law Or Fact Common To The Class Exists.

RCFC 23(a)(2) requires that questions of law or fact are common to the class. "[T]he common contention . . . must be of such a nature that is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In this case, the Government concedes that the question of "whether part-time employees are entitled to Sunday premium pay pursuant to 5 U.S.C. § 5546(a)," is a common question of law, but because this issue was resolved in *Fathauer*, there remains no common question of law. Gov't Opp. at 10.

For this reason, the court has determined that there is a common question of law applicable to the class.

>           **b.    Whether The Common Question Of Law Predominates
>                   Over Questions Affecting Individual Members.**

In this case, there is a credible dispute as to whether individual questions of fact predominate over the common question of law.  Although the court is cognizant of RCFC 23 (c)(1)(A)'s directive to determine certification of a class "as soon as practicable," in light of the evidence currently available, the court has determined that it is not now practicable to amend the class and make a certification determination.  *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1785.3 (3d ed.) ("[I]n some cases, even if a motion for class certification is made at an early stage, the determination under subdivision [RFCF] 23(c)(1) may have to be delayed substantially[,] because of an inability to determine whether class-action treatment is appropriate based on the currently available evidence[.]"); *see also Greenlee Cty. v. United States*, 487 F.3d 871 (Fed. Cir. 2007) (recognizing that "there may be many valid reasons justifying the deferral" of a class certification decision); *RadioShack Corp. v. United States*, No. 06-28T, 2009 WL 514065, at *3 (Fed. Cl. Feb. 27, 2009) (finding that a class certification determination was not practicable because there was a need to engage in further discovery).

For these reasons, the court has determined that Plaintiffs have not met their burden of proof as to predominance, at this juncture, prior to the further development of the facts.  At the close of trial, Plaintiffs may refile their Motion To Amend Certification, without prejudice.

## IV.    CONCLUSION.

For these reasons, the court denies Plaintiffs' October 12, 2015 Motion To Amend Certification of Class Action, subject to further development of the facts.

**IT IS SO ORDERED.**

>                   s/ Susan G. Braden
>                   **SUSAN G. BRADEN**
>                   Judge